UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

EX PARTE APPLICATION OF LÉA SCHWERY
ABDALLA UNDER 28 U.S.C. § 1782 TO TAKE
DISCOVERY[1]

20-mc-727 (PKC)

OPINION AND ORDER

-----------------------------------------------------------x

CASTEL, U.S.D.J.

       This is an ex parte application of Léa Schwery Abdalla to take discovery in aid of foreign proceedings in the Federative Republic of Brazil. 28 U.S.C. § 1782. Her application seeks the issuance of subpoenas directed to the Clearing House Payments Company LLC ("CHIPS") and the Federal Reserve Bank of New York (the "Fed-NY") for records of transactions or transfers for 93 persons or entities over a 23-year period. For reasons to be explained, the application is denied.

       Applications for issuance of subpoenas pursuant to section 1782 are often made ex parte. The Court first decides whether the issuance of a subpoena is appropriate on the face of the ex parte application. If it is, the subpoena is issued and the person or entity to whom the subpoena is directed may timely object. The Second Circuit has long held that a person whose information is the target of a section 1782 application also has standing to challenge the validity of its issuance. Application of Sarrio, S.A., 119 F.3d 143, 147–48 (2d Cir. 1997); Fed. Republic of Nigeria v. VR Advisory Servs., Ltd., __ F. Supp. 3d __, 20 mc 209, 2020 WL 6547902, at *9 (S.D.N.Y. Nov. 6, 2020) (Engelmayer, J.) ("Respondents have standing to challenge Nigeria's § 1782 application because it seeks production of their records."). The person whose information is sought may object on grounds, including that the subpoena was improperly issued

---

[1] The Clerk is directed to amend the caption to reflect the identity of the applicant.

under section 1782, the discovery sought is protected from disclosure by a privilege belonging to the person or the information sought ought to be protected by an order limiting its use.

Ms. Abdalla sought and obtained sealing of her initial section 1782 application from the Judge presiding in Part I. She now seeks to have this Court seal any resulting subpoenas and to enter an Order barring CHIPS or the Fed-NY from informing the parties whose information is sought of the application or the subpoenas.

There are 93 persons or entities whose information is sought covering over a twenty-year period. Some are parties to the Brazilian proceeding and others are not. In Ms. Abdalla's view, the 93 entities will come to know that their information has been produced at an unspecified time and place of her choosing or, perhaps, never. Because Ms. Abdalla has shown no valid basis for this extraordinary relief, applicant's request for continued sealing and for an Order barring disclosure also will be denied.

BACKGROUND.

Ms. Abdalla asserts that she engaged in a series of "flexible options contracts" at some unspecified time "[i]n the late 1990s" with Banco Mercantil de Descontos S.A. ("BMD S.A.") or its affiliates. (Mesquita Decl. ¶¶ 3, 6.) The option contracts granted her the right to sell and purchase U.S. dollars at fixed rates. (Id.)

A year before the contracts came due on May 15, 1998, BMD S.A. and perhaps its affiliates were liquidated by the Brazilian Central Bank. (Id. at ¶ 7.) Retour Ativos Financeiros Ltda - Em Liquidação Judicial ("Retour") is a successor in whole or in part to the assets and/or liabilities of BMD S.A.

Ms. Abdalla further claims that two defendants in the Brazilian action, Roberto Fakhoury and Oscar Fakhoury, and their families, made capital distributions from two entities

whose relationship to Retour, its predecessor or the option contracts is not clear; these transfers are said to be "to the detriment of the bank's creditors, including [the applicant]." (Id. ¶ 10.)

In 2018, ten years after the liquidation proceeding, Ms. Abdalla filed suit in the Civil Court of the Judicial District of São Paulo against BMD-BAN Ativos Financeiros S.A. and six individuals or their estates. (De Luca Decl., Ex. G.) While the relief sought is not well explained, it appears that she seeks, among other relief, to be paid based on a certain credit previously allowed to her but with an inflation and currency adjustment that is more favorable to her than the one that she has been offered. (Mesquita Decl. ¶ 19.) On her view of the merits, she is entitled to $10 million (U.S.) in inflation-adjusted U.S. dollars. (Id. ¶ 17.)

Ms. Abdalla seeks the section 1782 discovery to obtain evidence showing "a pattern of commingling funds between entities of the Retour economic group, between the Brazilian defendants and the various Retour entities" and that shareholders of the banks "have transferred funds that came from Retour to foreign bank accounts." (Id. ¶¶ 29, 33.) According to Ms. Abdalla'a application, a pattern of commingling supports her claim "that the Brazilian Defendants should be held personally liable for the debts" sought in the Brazilian proceeding. (Id. ¶ 29.) She also asserts that "[i]f the Brazilian Defendants are held personally liable," the discovery will rebut any future claim of insolvency on their part." (Id. ¶ 30.)

DISCUSSION.

    I.    <u>The Mandatory and Discretionary Factors of 28 U.S.C. § 1782.</u>

A district court may, "upon the application of any interested person," order a person within its jurisdiction to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28 U.S.C. § 1782(a). A section 1782 applicant must satisfy three mandatory factors by demonstrating that

"'(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.'" Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015) (quoting Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012)); accord In re Accent Delight Int'l Ltd., 869 F.3d 121, 128 (2d Cir. 2017).

If the applicant satisfies the mandatory factors, the district court then weighs the four discretionary factors listed in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264–65 (2004). "These are: (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264–65).

The Court's exercise of discretion "'is not boundless,'" and must be guided by the goals of "'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" Id. at 297–98 (quoting Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83–84 (2d Cir. 2004)).

II.     The Applicant Has Satisfied the Mandatory Factors of Section 1782.

In this ex parte context, the Court concludes that CHIPS and the Fed-NY are found or reside in this district.  Further, the Court concludes that applicant Léa Schwery Abdalla who is the claimant in the Brazilian litigation is an interested person.

A.  Standard for Determining whether Materials Are "For Use" in a Foreign Proceeding.

The only mandatory factor requiring discussion is whether the materials sought by applicant are "for use" in a foreign proceeding.  "The availability of Section 1782 discovery . . . is quite broad and only has broadened through successive amendments over the years."  In re Accent Delight, 869 F.3d at 134.  "[D]iscovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement.  The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail."  Mees, 793 F.3d at 298.  An applicant satisfies the "for use" requirement when the materials sought "are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of the proceedings" in the district court.  Id. at 301; accord In re Accent Delight, 869 F.3d at 132–33 (materials are "for use" if they "tend[ ] to prove" the applicant's fraud claim).

Applicant has the burden to demonstrate "that [she is] in a position to use the evidence they seek through their § 1782 application" in the ongoing foreign proceeding.  Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 120 (2d Cir. 2015); see also Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 29 (2d Cir. 1998) (materials cannot be for use when "there [are] no foreign proceedings, within the meaning of the statute, in which the discovery could be used.").  To be "for use," an applicant need not demonstrate that the materials

sought are ultimately admissible or discoverable in the foreign proceeding.  Brandi-Dohrn, 673 at 82.  "[T]he ultimate admissibility of the evidence is determined by the foreign tribunal." Id. "[R]equiring a district court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign law and such '[c]omparisons of that order can be fraught with danger.'"  Id. (second alteration in original) (quoting Intel, 542 U.S. at 263). However, it "may be necessary" for courts to consider the relevance of the materials sought "insofar as it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." Certain Funds, 798 F.3d at 120 n.7.

Where materials are sought for use in a future proceeding, the applicant must come forward with "an objective showing that the planned proceedings [are] within reasonable contemplation."  Id. at 124.  An applicant should "provide the legal theory supporting such a proceeding," "lay out either the content of his claims" or "a sufficiently concrete basis for" liability, and "provide sufficiently reliable indications of the likelihood that proceedings will be instituted within a reasonable time."  Mangouras v. Squire Patton Boggs, 980 F.3d 88, 101 (2d Cir. 2020) (quotation marks omitted).  In weighing whether the planned proceedings are within reasonable contemplation, "[c]ourts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it." In re Sargeant, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) (Pauley, J.).

In deciding whether the discovery sought is for use in a foreign proceeding, courts look to "(1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding."  Euromepa, 154 F.3d at 27.  In Euromepa, a French trial court entered a judgment of approximately $10 million, after which the losing party filed a section 1782 application seeking discovery into the prevailing party's ownership of the disputed property,

explaining that this discovery would be for use in its appeal of the trial court's judgment. Id. at 25–26. By the time the Euromepa decision issued, the judgment had been affirmed on appeal, and the remaining proceedings were limited to the enforcement of judgment in a French bankruptcy proceeding and a potential motion to a French appellate court to reopen judgment. Id. at 28.

The Second Circuit concluded that the French bankruptcy proceeding was not adjudicative in nature because the disputed merits had already been adjudicated and were not to be revisited. Id. ("Thus, in the French Bankruptcy Proceeding, nothing is being adjudicated; the already extant judgment is merely being enforced (to the extent permitted by the assets of the bankruptcy estate)."). Id. As to the possible motion to reopen judgment, the applicants themselves acknowledged that such a motion would turn on newly discovered evidence. Id. at 29. The Second Circuit concluded that this did not constitute either evidence for use in or an adjudicative proceeding because "Section 1782 is designed to provide discovery in aid of foreign litigation, not to provide discovery to justify the reopening of already completed foreign litigation." Id.

Subsequent to Euromepa, courts in this District have concluded that section 1782 relief may properly be granted to take discovery of assets in order to enforce an existing judgment, provided that the applicant has adequately identified the proceeding and demonstrated that the materials sought could be employed to some advantage in the proceeding. See, e.g., In re Gorsoan Ltd., 435 F. Supp. 3d 589, 597–99 (S.D.N.Y. 2020) (Abrams, J.) (discovery was "for use" when it went toward compliance with asset freeze and disclosure order in a Cyprus proceeding); Union Fenosa Gas, S.A. v. Depository Tr. Co., 2020 WL 2793055, at *3–5 (S.D.N.Y. May 29, 2020) (Engelmayer, J.) (English post-judgment attachment proceeding

brought by judgment creditor was adjudicatory in nature because the tribunal required an evidentiary showing from the applicant). Other decisions applying Euromepa have concluded that section 1782 relief should be denied where the applicant seeks asset discovery for the purpose of collecting or enforcing judgment in a contemplated, yet-to-be commenced proceeding. See Jiangsu Steamship Co. v. Success Superior Ltd., 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015) (McMahon, J.) (denying section 1782 discovery of assets where proceedings had not yet commenced and applicant sought to "easily obtain advance security for such a judgment (assuming that there is a foreign jurisdiction that, like the United States of America, has a pre-judgment attachment procedure) or enforce whatever judgment it might obtain in the as-yet-to-be-brought London arbitration."); In re MT "Baltic Soul" Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (Swain, J.) (denying application where petitioners had not commenced enforcement action after obtaining judgment). Subsequent to Euromepa, the Second Circuit has affirmed the use of section 1782 for discovery relevant to a foreign bankruptcy proceeding, where the materials may aid in the reconstruction of financial records and identifying the debtors' assets. In re Application of Gissin, 649 Fed. App'x 27, 28 (2d Cir. 2016) (summary order); see also Euromepa, 154 F.3d at 28 ("[I]t is clear that a bankruptcy proceeding may, in some instances, be an adjudicatory proceeding within the meaning of the statute . . . .").

    The use of the discovered documents to rebut a claim of insolvency by the individual defendants in the event Ms. Abdalla prevailed in the Brazilian proceedings and the defendants claimed insolvency is wholly speculative and not a proper basis on which to grant the

application.[2]  However, based solely on Ms. Abdalla's description of the Brazilian proceeding, the Court concludes that the subpoenaed materials are for use in the Brazilian proceeding to the extent they would tend to show improper distribution of funds from the bank entity to its shareholders.

      III.    Applicant Has Not Satisfied the Discretionary Factors of Section 1782.

          A.  Participant in the Foreign Proceedings.

The first Intel factor considers "whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent' . . . ." Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264). The CHIPS and the Fed-NY are not parties to the Brazilian proceedings.

This factor weighs in favor of Ms. Abdalla.

          B.  The Nature and Character of the Foreign Proceedings.

The second Intel factor considers "'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'. . . ." Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264). There is no evidence before this Court suggesting that Brazil or Brazilian Courts are unreceptive to requests by U.S. persons for judicial assistance. Courts in this district

---

[2] In considering both the mandatory and discretionary factors, courts have denied section 1782 applications when the discovery sought is a "fishing expedition" for anticipated use in "nonexistent, purely hypothetical proceedings . . . ." In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions, 2015 WL 4040420, at *8 (S.D.N.Y. June 29, 2015) (Nathan, J.); see also In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014) (Buchwald, J.) (denying application where the applicants had not commenced foreign proceedings and appeared to seek materials in order to "investigate whether litigation is possible in the first place, putting the cart before the horse."); In re Sargeant, 278 F. Supp. 3d at 823 (denying application as premature where no foreign proceedings were underway and the application was "bereft of even the broadest contours of what the possible proceeding(s) . . . may entail . . . .").

recently have granted requests for section 1782 discovery for use in Brazilian proceedings. In re Atvos Agroindustrial Investimentos S.A., 20 mc 211 (GBD)(SDA), __ F. Supp. 3d __, 2020 WL 4937084, at *1 (S.D.N.Y. Aug. 24, 2020); Matter of Degens, 20 mc 237 (JGK)(RWL), 2020 WL 4252725, at *6 (S.D.N.Y. July 24, 2020).

The second factor also weighs in favor of granting the application.

C.   Whether the Request Circumvents Foreign Discovery Restrictions.

The third Intel factor weighs "(3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States' . . . ." Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264–65).

In reviewing this factor, "there is a difference between a § 1782(a) request that seeks documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a mechanism for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents." In re Accent Delight Int'l Ltd., 791 F. App'x 247, 251 (2d Cir. 2019) (summary order; emphasis in original). The factor weighs against the application only if permitting discovery would violate "the clearly established procedures of a foreign tribunal," as set forth in "authoritative proof . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099–1100 (2d Cir. 1995) (Euromepa I) (emphasis in original; quotation marks omitted). The Second Circuit has observed that "[f]ew if any foreign jurisdictions permit the scope of discovery available in [U.S.] courts," and that "'[i]f district courts were free to refuse discovery based upon its unavailability in a foreign court . . . § 1782 would be irrelevant

to much international litigation, frustrating its underlying purposes." Mees, 793 F.3d at 302 (quoting Metallgesellschaft AG v. Hodapp, 121 F.3d 77, 80 (2d Cir. 1997)).

There is no obligation to first seek discovery from the foreign court and there may be instances where the discovery may be had via section 1782 where the foreign court has denied the discovery or requests to take similar discovery.

But from the face of applicant's own ex parte submissions, there is cause for questioning whether the discovery sought here circumvents Brazilian restrictions on fact gathering as applied to this case. The Court has been informed that the proceeding in Brazil was commenced in 2018. The applicant has sought an order for production from the Central Bank of Brazil for "financial information of the [Brazilian Defendants], including the amounts deposited and received by the Brazilian Defendants from [the bank] since the date of liquidation." (Mesquita Decl. ¶ 20.) The grant or denial of these applications would not necessarily doom Ms. Abdalla's section 1782 application to take discovery from CHIPS or the Fed-NY seeking similar information from those entities. But Ms. Abdalla's stingy application does not explain when her discovery application was made to the Brazilian Court, whether it was made on notice to the defendant in the Brazilian action, whether it was opposed or on what basis the information is discoverable. Respect for the Brazilian Court would counsel in favor of denying the application without prejudice on this sparse record.

The factor weighs heavily against Ms. Abdalla.

D. The Subpoenas Are Unduly Intrusive and Burdensome.

The fourth Intel factor weighs "whether the request is 'unduly intrusive or burdensome.'" Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264-65). "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad

or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  Id. at 302.  The text of Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  "[T]o the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery."  Mees, 793 F.3d at 302.

In an effort to be helpful, Ms. Abdalla points out that the subpoena is for "transfers made by a limited number of individuals and entities."  (Mem. at 18.)  In a tautological sense, the assertion is true because any number, including 93, is a finite number.  By the same logic, it is also true that the subpoenas seek documents for a limited time period, i.e. 23 years.  But the sheer number of entities and broad time span bespeak of a fishing expedition.  The primary thrust of the Brazilian proceeding is the allegedly wrong and unjust application of an inflation and currency adjustment.  The discovery Ms. Abdalla seeks does not bear directly on these adjustments to her "flexible options contracts," but rather is sought to obtain evidence supporting a pattern of commingling funds between Retour and the Brazilian Defendants.  The offending transfer alleged in the Brazilian action was made by two defendants of their shares in two entities and took place over two decades ago.  (Mesquita Decl. ¶ 10; De Luca Decl., Ex. G. at ¶¶ 62–64.)  Ms. Abdalla also asserts that the value of Retour's assets declined between 2010 and 2015 when it was already in the liquidation process.  (Mesquita Decl. ¶ 5.)  Whatever the import of a decline in the institution's assets, her application is not narrowly tailored to address these circumstances or time period.  The Court declines to apply a "blue pencil" to redraft these unduly intrusive and burdensome requests.

CONCLUSION.

The application is DENIED without prejudice. Any further foreign discovery application by Ms. Abdallah should be filed under this docket or marked as related. The Clerk is directed to unseal the docket and all entries on the docket and terminate the motion.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
January 19, 2021